HINKEBEIN, J.,
for the Court:
¶ 1. Jonathan Ruttley was convicted in the Lauderdale County Circuit Court of murder and the possession, as a convicted felon, of a firearm in connection therewith. Due to his habitual offender status, Rutt-ley received two life terms with the Mississippi Department of Corrections, both to be served without the possibility of early release. Aggrieved by this result, Ruttley appeals to this Court on the following grounds:
I. THE VERDICT OF GUILT WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE; THE TRIAL COURT ERRED IN DENYING DEFENDANT’S PEREMPTORY INSTRUCTION AND MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT.
II. THE RIGHT TO SUMMON WITNESSES ON HIS BEHALF WAS DENIED TO RUTTLEY.
III. PROSECUTORIAL MISCONDUCT DEPRIVED RUTTLEY OF A FAIR TRIAL.
IV. INSTRUCTING THE JURY THAT IT COULD CONVICT OF DEPRAVED HEART MURDER WAS LEGAL ERROR AND WITHOUT EVIDENTIARY SUPPORT.
V. WHEN RUTTLEY’S PRIOR CONVICTION WAS INTRODUCED, THE COURT ERRED BY NOT REQUIRING A TIME FRAME FOR THE CONVICTION.
VI. THE DEFENSE ATTORNEY RENDERED INEFFECTIVE ASSISTANCE.
Holding these assignments of error to be without merit, we affirm the judgment of the circuit court.
FACTS
¶ 2. On the afternoon of September 29, 1995, Douglas Robinson, James Bell, and Ammon Gracie left Demopolis, Alabama bound for Meridian, Mississippi to purchase beer. However, the driver, Bell, became lost in a rural area of Lauderdale County and they were forced to ask for directions from three men they encountered lingering outside a residence. Because Gracie and Robinson insisted on also questioning the men, one of which was Ruttley, about where they might buy marijuana, the three never reached their destination.
¶ 3. According to the trial testimony of both Bell and Gracie, Ruttley answered their inquiry regarding the marijuana by directing Bell to proceed down the road approximately 100 yards and wait for his arrival. When they met Ruttley, Gracie exited and pulled the passenger seat of the two-door automobile forward so that Rutt-ley might get into the rear of the car with Robinson. However, while Gracie leaned against the car waiting for Ruttley to do so, Robinson exited the vehicle as well and began discussing the quality and quantity to be purchased with their new acquaintance. When the two could not reach an agreement, Robinson re-entered the car. But shortly thereafter, as the continuing conversation deteriorated into an argument, he attempted to exit once again. While Robinson was doing so, Ruttley fired a handgun into the car, shooting him in the chest.
¶ 4. Upon realizing that his friend had been wounded, Bell pulled Robinson back into the vehicle, closed the passenger door, and drove away in the midst of Ruttley’s continued shooting. He stopped at a nearby convenience store to call an ambulance, but by that time Robinson had already died from his injury. Meanwhile, Gracie, who only observed Ruttley leaning into the open door of the automobile, had run toward a nearby mobile home when he heard the gunfire. Once inside, he also called law local enforcement personnel.
¶ 5. Based primarily on these facts as presented by Bell and Gracie at trial, jurors found Ruttley guilty on both the murder and firearm possession charge. It is from these convictions that he now appeals to this Court.
*876 ANALYSIS
I. THE VERDICT OF GUILT WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE; THE TRIAL COURT ERRED IN DENYING DEFENDANT’S PEREMPTORY INSTRUCTION AND MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT.
¶ 6. Ruttley initially contends that the trial court committed reversible error in denying his request for a peremptory instruction and subsequent motion for judgment notwithstanding the verdict. He argues that internal contradictions found in the trial testimony given by Bell and Gracie along with disparity in their accounts and with the physical evidence, necessarily created reasonable doubt as to his guilt. However, as the State contends in response, such evaluations are primarily the jury’s responsibility, not that of this Court. We agree with the State and affirm on this basis.
¶ 7. Requests for peremptory instruction and motions for JNOV both challenge the legal sufficiency of the evidence. McClain v. State, 625 So.2d 774, 778 (Miss.1993) (stating that a motion for judgment of acquittal notwithstanding the verdict also tests legal sufficiency of the evidence). See also Strong v. State, 600 So.2d 199, 201 (Miss.1992) (stating that the trial judge is bound by the same law whether addressing a motion for directed verdict or addressing a request for a peremptory instruction). Since each requires consideration of the evidence before the court when made, this Court properly reviews the ruling only on the last occasion that the challenge was made in the trial court. McClain, 625 So.2d at 778. In this instance, that challenge was quelled when the circuit court denied Ruttley’s motion for JNOV. See, e.g., Wetz v. State, 503 So.2d 803, 807-08 (Miss.1987).
¶ 8. Where a defendant moves for JNOV, the trial court considers all of the credible evidence consistent with the defendant’s guilt, giving the prosecution the benefit of all favorable inferences that may be reasonably drawn from this evidence. McClain, 625 So.2d at 778. This Court is authorized to reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could not find the accused guilty. Wetz, 503 So.2d at 808 n. 3.
¶ 9. In the case sub judice, Ruttley directs our attention to certain discrepancies between the statement originally given by Gracie to police and the account he gave at trial, noting that he originally omitted any mention of an attempted drug buy. In that vein, Ruttley also emphasizes variances in Bell’s and Gracie’s respective accounts regarding, among other details, ownership of the automobile. He also discusses their degree of prior familiarity with both the area and Ruttley himself, when the decision to purchase marijuana was actually made, and whether Robinson was entirely in or outside the vehicle when he was hit. Additionally, he asks this Court to note the presence of gunpowder residue on the victim’s hands and invites a comparison between the eyewitness testimony that Ruttley was very near Robinson when he fired his weapon, and the medical examiner’s conclusion that the shot entered his body from a distance of between one and one-half to two feet, alleging a significant inconsistency between the two descriptions. Ruttley’s objective appears to be that of lending support to his claim, as presented at trial, that Bell, Gracie, and Robinson ventured to his home on the afternoon of the incident pursuant to some unknown vendetta against him. In connection therewith, he claims that it was actually (1) Robinson who first drew a weapon and (2) Gracie who accidentally shot his friend with a second pistol while attempting to end the ensuing struggle.
¶ 10. Indeed, it is clear from the trial transcript that neither Bell nor Gracie was an ideal witness for the State since both their recollections of that afternoon were, *877 to some extent, hazy. Moreover, Gracie, while describing the events leading up to the shooting, seems to have become confused on several occasions by defense counsel’s intense cross-examination. However, each testified with unequivocal specificity regarding the pertinent facts as observed from his distinct perspective. Moreover, we note Bell’s steadfast recollection that he watched, from only a few feet away, an unprovoked Ruttley fire at Robinson. This testimony alone sufficed to meet the standards described above. Nash v. State, 278 So.2d 779, 780 (Miss.1973).
¶ 11. Since each of the perceived weaknesses in the prosecution’s case were repeatedly stressed below by Ruttley’s trial counsel, we perceive no injustice in the submission of this case to the jurors and leave them resulting determination of guilt undisturbed. This assignment of error is without merit.
II. THE RIGHT TO SUMMON WITNESSES ON HIS BEHALF WAS DENIED TO RUTTLEY.
¶ 12. During the months following Robinson’s death, David Whitehead, a forensic scientist with the Mississippi Crime Laboratory, discovered particles of gunpowder residue on Robinson’s hands but not on samples taken from Ruttley’s. According to Ruttley, his attorney subpoenaed Whitehead on Friday, February 14 to appear at trial on the following Tuesday for the purpose of presenting these findings before the jury. However, Whitehead failed to appear. It seems that, although Whitehead did not notify the defense in advance of a conflict, he apparently did discuss the matter with the district attorney’s investigators, who, according to the prosecutor’s subsequent narrative as found in the record, “told him as far as we are concerned, that he could go.”
¶ 13. When Whitehead’s absence became apparent, defense counsel first suggested to the court, without making a formal motion, that he might require a continuance. But subsequently, without seeking a formal ruling on the issue, he asked that Whitehead’s report, which contained the necessary information, simply be admitted into evidence. Rather than ruling immediately on the State’s resultant hearsay objection, the judge postponed Ms decision. But after the next recess, the attorneys informed the court that the matter had been settled; each would stipulate to the discovery of possible gunpowder residue on Robinson’s hands. This stipulation was then read to the jury.
¶ 14. Although both Ruttley and the State have included lengthy discussions regarding the matter within their respective appellate briefs, it is nevertheless immaterial when or who, if anyone, properly subpoenaed Mr. Whitehead. The same may be said for Ruttley’s contention that the prosecutor, by giving Whitehead, his “blessing” to leave the State, somehow interfered with Ruttley’s right to compulsory process. In support of his various arguments Ruttley cites only Stringer v. State, 500 So.2d 928 (Miss.1986), wherein our supreme court indeed admonished prosecutors against legal maneuvering for the singular purpose of discouraging defense witness attendance. Stringer, 500 So.2d at 937. However, the opinion actually serves better to illustrate the flaw in his contention, as the Stringer court ultimately relied upon the procedural bar concept in reaching its decision to affirm. Id. In doing so, the court described defense counsel’s acquiescence in the State’s strategy, and noted that, “the right to examine ... was not withheld by the court, but was precluded by the decision of the defendant’s attorneys.” Id. The same is true for Ruttley’s choice to forego a lengthy debate on the suitability of a continuance and stipulate to the matters for which he needed Whitehead’s testimony. Since jurors were clearly privy to any details which Whitehead might have testified to if he had appeared, Ruttley may not now revive the matter. Thus, this assignment of error is without merit.
*878 III. PROSECUTORIAL MISCONDUCT DEPRIVED RUTTLEY OF A FAIR TRIAL.
¶ 15. Ruttley’s appellate counsel also claims that his client was denied a fair trial, citing the following individual allegations of prosecutorial misconduct as well as their cumulative effect as his basis: (1) during his cross-examination, the prosecutor took “advantage of Ruttley’s low level of language skill and plodding mind,” (2) the prosecutor “led” some of the State’s witnesses through their testimony, and (3) by eliciting comments from law officers regarding the' half-hour “stand-off’ which occurred when they attempted to arrest Ruttley, the prosecutor led jurors to infer an “admission of guilt” on his part. In response, the State argues that the trial transcript lends essentially no support to Ruttley’s assertions, reminding this Court that questions of admissibility and remedial action relative to such purported errors lie largely within the discretion of the .trial judge, especially in a case where defense counsel- failed to bring them to his/her attention. As to both of these points, we agree with the State.
¶ 16. Ruttley is correct in that a trial judge possesses the authority to declare a mistrial where prosecutorial conduct substantially deflects the attention of the jury from the issues that it has been called upon to decide or appeals to bias, passion, or prejudice, and therefore significantly impairs a defendant’s right to a fair trial. Hickson v. State, 472 So.2d 379, 384 (Miss.1985). Although it is the duty of the district attorney to prosecute a case with diligence, it is also his/her duty to see that the defendant as well as the State receives a fair and impartial trial. McCaskill v. State, 227 So.2d 847, 852 (Miss.1969). However, the trial judge is the person best situated to decide upon the course of conduct necessary to elicit the truth and yet safeguard the rights of the accused, and unless this Court can say, from the whole record, he abused his discretion, we should not reverse. Summerville v. State, 207 Miss. 54, 65, 41 So.2d 377, 380 (1949). We find no evidence of this here.
¶ 17. Aside from the contentions within Ruttley’s appellate brief, there is no indication that any questions employed by the prosecutor actually influenced the answers given by the investigating officers and therefore resulted in injury to Ruttley. See Id. The same may also be said for any remarks concerning Ruttley’s arrest, since only factual questions regarding matters such as the length of time required for his capture were presented before the jury. Similarly, we think there is no merit in Ruttley’s contention that the district attorney took unfair advantage of him during cross-examination. The record discloses generally straightforward questions and appropriate answers thereto. While it is evident that the interrogation was designed to gain various concessions from Ruttley, as the State indicates on appeal, such is precisely the purpose of a proper cross-examination. Intensity should not necessarily be equated with inequity in this instance. Hawkins v. State, 228 Miss. 209, 214, 87 So.2d 485, 487-88 (1956). And as for Ruttley’s claim of cumulative error, it should suffice to say that where there is “no reversible error in any part, ... there is no reversible error to the whole.” McFee v. State, 511 So.2d 130, 136 (Miss.1987). This assignment of error is wholly without merit.
IV. INSTRUCTING THE JURY THAT IT COULD CONVICT OF DEPRAVED HEART MURDER WAS LEGAL ERROR AND WITHOUT EVIDENTIARY SUPPORT.
¶ 18. Because Ruttley was initially believed to have fired his weapon from within another vehicle, the case was originally classified as a drive-by-shooting. On that basis, the prosecution indicted him for what is commonly known as depraved heart murder, defined by the code as a killing “done in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human *879 life, although -without any premeditated design to effect the death of any particular individual.... ” Mississippi Code Annotated § 97-3-19(1)(b) (Rev.1994). As Ruttley noted both below and again before this Court, the State stuck with this early decision even after extracting a more de-tañed and coherent account of his actions from Bell and Gracie indicating unquestionable deliberateness. Consequently, jurors were ultimately charged by instruction S-l as follows:
The Court instructs the Jury that, should you find from the evidence in this case, beyond a reasonable doubt, that:
1. On or about the 29th day of September, 1995, in Lauderdale County, Mississippi,
2. The Defendant, Jonathan Michael Ruttley, did wilfully, unlawfully, and fe-loniously, in the commission of an act eminently dangerous and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of Douglas Lamar Robinson;
3. Did Kill Douglas Lamar Robinson; then it is your sworn duty to find the Defendant guilty of Murder under Count 1.
Should the State faü to prove any one or more of these essential elements beyond a reasonable doubt, then you shall find the Defendant not guflty of Murder under Count 1.
¶ 19. Ruttley argues that this was improper because the instruction was not supported by the evidence. In response to this we need only note that §§ 97-3-19(a) and (b), which define premeditated murder and depraved heart murder respectively have been “coalesced” by long standing and widely accepted case law because, “as a matter of common sense, every murder done with deliberate design to effect the death of another human being is by definition done in the commission of an act imminently dangerous to others and evincing a depraved heart, regardless of human life.” Catchings v. State, 684 So.2d 591, 599 (Miss.1996) (citing Mallett v. State, 606 So.2d 1092, 1095 (Miss.1992)). See also Hurns v. State, 616 So.2d 313, 321 (Miss.1993). To that end, our supreme court has repeatedly held that an “act which poses a risk to only one individual and which results in that individual’s death may also be deemed depraved heart murder.” Windham v. State, 602 So.2d 798, 802 (Miss.1992). Perhaps more pertinent to the facts of the case sub judice, a death which results “from injuries inflicted through use of [any] object ... has been deemed to be within the scope of depraved heart murder statutes.” Id. at 802-03. Recognizing his unavoidably dismal odds for success, Rutt-ley candidly asks that we overturn this precedent. We decline his request because Ruttley has utterly failed to provide evidence of the substantially adverse effects upon which such action must be predicated. State Ex Rel. Moore v. Molpus, 578 So.2d 624, 635 (Miss.1991). This facet of his argument is without merit.
V. WHEN RUTTLEY’S PRIOR CONVICTION WAS INTRODUCED, THE COURT ERRED BY NOT REQUIRING A TIME FRAME FOR THE CONVICTION.
¶ 20. While cross-examining Rutt-ley, the prosecutor tested the veracity of his testimony by bringing his prior robbery conviction to the jury’s attention. Though the trial court subsequently warned jurors against relying on this information when making their determination, Ruttley nevertheless argues on appeal that this admonition was ineffective because the judge faded to note therein the date upon which the conviction was returned. In that vein, he claims that “the jury would have been better able to separate [his] guilt of robbery from their judgment of guüt for the present charge of murder had they known that the robbery was seven years earlier.” In doing so he relies on Bounds v. State, 688 So.2d 1362 (Miss.1997), wherein the Mississippi Supreme Court held a trial judge in error for admitting substantive evidence pursuant to *880 Rule 404(b) of the Mississippi Rules of Evidence without himself giving full consideration to or requiring that the State inform jurors of the “time frame” during which the multiple previous “bad acts” took place. Bounds, 688 So.2d at 1371. The justices apparently felt that the jury should have been fully informed regarding the circumstances surrounding the events in order to thoroughly evaluate their relevance and probative value. Id. However, any reliance on this holding is misplaced in this instance, as both the factual backdrop and the relevant legal principles at issue here are distinct from those at issue in the opinion.
¶ 21. In this case, the defense stipulated, and jurors were well aware from the outset that Ruttley had previously been convicted of a felony. The potential for prejudice from merely disclosing the nature of the offense was therefore minimal at best. Moreover, the robbery conviction was mentioned only briefly .during Ruttley’s cross-examination for impeachment purposes as allowed by Rule 609(a)(2) of the Mississippi Rules of Evidence, not as an integral part of the State’s case-in-chief under Rule 404(b) as in Bounds. Id. at 1369-70. See Bogard v. State, 624 So.2d 1313, 1316 (Miss.1993) (noting that robbery conviction may be introduced pursuant to M.R.E. 609(a)(2) as crime of “dishonesty” for purpose of impeaching defendant’s credibility as witness in his own behalf). Presumably because subsection (b) of Rule 609 itself imposes a time limitation on admissible prior convictions, neither we nor Ruttley have located any legal requirement that the age of these crimes accompany their mention before jurors. Without any relevant authority indicating that we conclude otherwise, we hold this assignment of error to be without merit.
VI. THE DEFENSE ATTORNEY RENDERED INEFFECTIVE ASSISTANCE.
¶ 22. In conclusion, Ruttley directs our attention again to the conduct of his trial counsel, arguing that under the totality of the circumstances, these alleged errors demonstrate that he received legal representation insufficient to satisfy his Sixth Amendment right to counsel. The following are Ruttley’s points of contention:
1. Trial counsel failed to properly investigate and/or obtain documentation relating to Bell’s three prior burglary convictions, the records for which were sealed due to his juvenile status at the time.
2. Trial counsel failed to subpoena Mr. Whitehead of the state crime lab in a timely manner.
3. Trial counsel failed to properly move for a continuance upon discovering Mr. Whitehead’s absence and failed to insist upon a ruling with regard to his informal proposal of a delay upon discovering Mr. Whitehead’s absence.
¶ 23. The State responds by arguing that the alleged errors committed by Ruttley’s trial counsel, as contained in the trial court record, are insufficient to satisfy the elements of an ineffective assistance of counsel claim. We agree with the State.
¶ 24. In order to demonstrate that he was denied effective assistance of counsel, a criminal defendant must show that (1) the counsel’s performance was deficient and that the deficient performance prejudiced the defense, and (2) that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceedings would have been different. Mohr v. State, 584 So.2d 426, 430 (Miss.1991) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. Taylor v. State, 682 So.2d 359, 363 (Miss.1996) (citing Strickland, 466 U.S. at 694, 104 S.Ct. 2052). In order to make a successful ineffective assistance of counsel claim a defendant must satisfy both prongs of the Strickland test. Mohr, 584 So.2d at 430. The deficiency and any prejudicial *881 effect are assessed by looking at the totality of circumstances. Carney v. State, 525 So.2d 776, 780 (Miss.1988).
¶25. Addressing the first prong of the Strickland test, this Court must inquire as to whether Ruttley has demonstrated that his attorney performed in a deficient manner, resulting in prejudice to him. While Ruttley has provided us with a detailed fisting of alleged errors, we feel that most if not all of these may be attributed to trial strategy, and therefore were at his counsel’s discretion. Mississippi law creates a strong, but rebuttable, presumption “that trial counsel’s conduct is within the wide range of reasonable conduct and that decisions made by trial counsel are strategic.” Vielee v. State, 653 So.2d 920, 922 (Miss.1995). We are not convinced that Ruttley has effectively shown that his trial counsel acted in a deficient manner. However, this Court is a court of appellate review and we cannot make factual findings. Therefore, for purposes of our review we wifi assume, ar-guendo, that Ruttley’s trial counsel did act in an inept manner. This leads us to the second prong of Strickland.
¶ 26. Under the second prong of Strickland, Ruttley is required to demonstrate that his trial counsel’s deficient performance caused him prejudice. Mohr, 584 So.2d at 430. This prejudice requirement mandates that the defendant show that “there is a reasonable probability that but for these errors by counsel, the defendant would have received a different result from the trial court.” Nicolaou v. State, 612 So.2d 1080, 1086 (Miss.1992). After carefully scrutinizing the trial court record, we are unable to locate any evidence that Ruttley would not have been convicted but for the alleged errors of his trial counsel. In an attempt to satisfy his burden of demonstrating prejudice, Ruttley has done little more than present this Court with his personal opinion, based entirely upon speculation, as proof of the prejudice that he supposedly suffered as a result of his attorney’s “errors.” We are not persuaded by Ruttley’s speculations and hold that they fall short of satisfying the prejudice requirement of Strickland. Because this Court is unable to conclude from the record that Ruttley’s trial counsel was constitutionally ineffective, we hold this assignment of error to be without merit.
¶ 27. THE JUDGMENT OF THE LAUDERDALE COUNTY CIRCUIT COURT OF CONVICTION OF MURDER AND POSSESSION OF A FIREARM AS A CONVICTED FELON AND SENTENCES OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT THE POSSIBILITY OF PAROLE IS AFFIRMED. ALL APPEAL COSTS ARE ASSESSED TO THE APPELLANT.
BRIDGES, C.J., McMILLIN and THOMAS, P.JJ., and COLEMAN, DIAZ, HERRING, KING, PAYNE and SOUTHWICK, JJ., concur.