635 So.2d 1364 (1994)
David Lee WATTS
v.
STATE of Mississippi.
No. 91-KA-0645.
Supreme Court of Mississippi.
February 17, 1994.
Rehearing Denied May 19, 1994.
Dannye L. Hunter, Jackson, for appellant.
Michael C. Moore, Atty. Gen., Wayne Snuggs, Asst. Atty. Gen., Jackson, Ellen Y. Dale, Ridgeland, for appellee.
Before PRATHER, P.J., and PITTMAN and SMITH, JJ.
SMITH, Justice, for the Court:
David Lee Watts was found guilty in the Circuit Court of Scott County of attempted burglary and sentenced to the maximum term of seven years imprisonment. On this appeal, Watts presents three assignments of error, only one of which warrants discussion. The other two are without merit. After careful consideration, we are forced to conclude that it was reversible error to admit evidence of another crime, found on Watts' person at the time of his arrest. For the reasons discussed below, we reverse and remand for a new trial.

THE FACTS
Trial of this cause was held in June 1991. The State called as its first witness Lamar Gatewood, Jr., owner of the premises at which the alleged attempted burglary took place. Gatewood testified his store was a wholesale grocery business located in Scott County, Mississippi. He testified the business had a burglar alarm system which was in operation when he closed at the end of business on Monday, April 29, 1991, at about 4:30 p.m. He further stated the electricity was in good working order.
In the early morning hours of April 30, Gatewood received a phone call from the Forest Police Department. Arriving at his store he saw that the police had placed someone in the back of a patrol car. He further noticed the many lights normally left on were *1365 off because the electric meter on the side of the building had been pulled off.
On cross-examination, Gatewood admitted a man named Henry Riley worked for him (apparently as a watchman) from Monday thru Friday, from 6:30 a.m. until 3:00 p.m. Riley resided in a trailer about seventy-five yards from the warehouse. Gatewood stated that he assumed Riley had been at work on April 30, 1991, as usual, until 3:00 p.m. Gatewood stated he saw Riley when he arrived at the scene of the alleged crime and heard Riley tell the police he worked for Gatewood and that was why he was there. Riley told Gatewood the reason he was there was he heard on his police scanner that the police were at the warehouse.
Officer Jimmy Nichols, a patrolman for the City of Forest Police Department, was on patrol April 30, 1991, and received a call to answer a burglar alarm at Gatewood Wholesale Grocery at approximately 2:35 a.m. He estimated he arrived there in 45 seconds since he was only two blocks away at the time. Nichols saw nothing suspicious at the front of the building, but as he turned around the building he observed a person going behind a dumpster off the loading dock area.
Officer Nichols stated he pulled up to the dumpster, shined his lights on it and told the person to come out. The person remained behind the dumpster, was again advised to come out, and then raised both hands above the dumpster. At this time, Nichols noted that the person was wearing black work gloves. After a short time, the person lowered his hands and Nichols again told him to come out. The person again raised his hands, but this time without the gloves.
Backup officers arrived at the side of the dumpster where the person could be better seen. Eventually the person, later identified as the appellant, David Lee Watts, came out and got down on the ground where he was handcuffed, searched and placed in a patrol car.
Outside the presence of the jury, Officer Nichols testified that in searching Watts the officers retrieved an American Express card, a wad of toilet paper and a silver coin from his pockets. Five more silver coins were found behind the dumpster. The name on the American Express card read "David E. Gaddis," which the officers recognized as the name of a man whose business had been burglarized the previous night. Officer Nichols stated that although they were not aware that coins had been taken at the time Watts was searched, they later learned the coins were the same coins reported stolen from the Gaddis' business. The State offered this testimony to prove Watts' intent to steal in the attempted burglary against Watts. Counsel for Watts objected to the testimony as being "pure speculation" and possibly prejudicial to Watts. After determining that the officers were aware of a burglary the previous night at Gaddis Industrial Farms at the time they searched Watts, the trial court overruled the objection.
Following the return of the jury, Officer Nichols testified to the above-stated facts. Nichols identified David Lee Watts as the man he observed traveling from the loading dock behind Gatewood Wholesale Grocery to a dumpster. Officer Nichols further testified that another officer on the scene, Officer Roncali, searched behind the dumpster and found the black gloves, a pry bar and the silver coins. Nichols stated the officers determined the gloves to be the same ones Watts was wearing when he raised his hands because they were the only gloves found behind the dumpster.
In addition to three other officers, Watts, and Mr. Gatewood, Officer Nichols also remembered Henry Riley being at the crime scene. Officer Nichols stated his opinion that the pry bar was significant evidence that Watts might be in the area to break into the Gatewood business. Nichols further thought that the pry bar was the only object discovered which could have been used to pull off the power meter. Officer Nichols admitted that in his report of the incident prepared that same night, there was no mention made of the discovery of the pry bar.
Officer Randy Patrick, a patrolman for the Forest Police Department, was on duty the *1366 night of April 30, 1991. He responded to a call for back up and arrived at the Gatewood Wholesale Grocery to find a black male, later identified as Watts, behind a dumpster. Officer Patrick observed Watts with a pry bar in his hand and instructed him to come out. After throwing the pry bar behind the dumpster, Watts did come out and lie on the ground.
Upon cross-examination, Patrick stated he knew Henry Riley prior to the night in question, and on seeing Riley on the scene, instructed him to go home. Riley did not comply and stated he was protecting the Gatewood building. Officer Patrick testified that in his opinion Riley was somewhat younger than Watts and was probably capable of removing an electric meter. Finally, Patrick stated that in patrolling the area he had never seen Riley working as a guard or a watchman prior to or after the attempted burglary.
The judge inquired whether Officer Patrick was aware that the Gaddis property had been burglarized when Watts was arrested. Officer Patrick stated "No, sir, not at the time," and immediately thereafter stated, "Yes, sir." Upon further questioning by the court, Patrick testified that the coins and credit card were not reported as stolen from the Gaddis property until after Watts was arrested.
The State rested its case and the defense moved for a directed verdict, which motion was overruled. Watts sought to call Henry Riley to the witness stand, but the defense rested after it was determined that Riley had not been located. The jury returned a guilty verdict and Watts was sentenced to the maximum term of seven years in the state penitentiary.

DISCUSSION

THE COURT COMMITTED REVERSIBLE ERROR IN ALLOWING IRRELEVANT AND PREJUDICIAL HEARSAY STATEMENTS AND EXHIBITS INTO EVIDENCE OVER DEFENDANT'S OBJECTIONS.
Watts first complains about testimony from Officers Nichols and Patrick regarding the credit card and silver coins found on or near Watts at the time of his arrest. Citing Mississippi Rules of Evidence Rule 403, Watts argues that the probative value of his testimony was outweighed by its prejudicial effect.
The State submits that the testimony of the officers was admissible under Rule 404(b), which permits evidence of "other crimes, wrongs or acts" to be admitted as proof of "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." More specifically, the State argues, the testimony "would go to prove intent, common plan or scheme, and ability to commit the burglary of Gatewood Grocery." The State further submits the testimony was "necessary to present to the jury `the complete story of the crime.'" The State cites Brown v. State, 483 So.2d 328, 330 (Miss. 1986), and Turner v. State, 478 So.2d 300, 301 (Miss. 1985), in support.
A cursory glance at the cited cases reveals they involved factual situations distinguishable from those of the case at bar. In Brown, for instance, the appellant argued that at his trial for burglary an exchange between the prosecution and the court regarding an outstanding arrest warrant had a highly prejudicial effect upon the jury. 483 So.2d at 330. The facts were that a police chief was called to the scene where Brown had attempted to cash a stolen check. The chief testified that he observed Brown wad something up and throw it into a ditch; the object turned out to be the stolen check. Over objection, the chief further stated that Brown was then arrested pursuant to an outstanding arrest warrant. In overruling the objection, the court stated that the prosecution could not go into the details of the arrest warrant "unless it pertains to this case," to which the State responded, "No, sir, it does not." Id.
Brown argued that in discussing even the existence of the warrant, the trial court and the prosecution had impermissibly informed *1367 the jury that Brown was likely involved in another crime. This Court disagreed, finding the comments fell within the range of those necessary to "telling a rational and coherent story of what happened." Turner v. State, 478 So.2d 300, 301 (Miss. 1985); Neal v. State, 451 So.2d 743, 759 (Miss. 1984).
In contrast to Brown, witnesses for the State in the present case testified in great detail to much more than was necessary to provide the jury with a coherent story of the night's events. It must be recalled that Watts was tried on a single charge of attempted burglary of the Gatewood Wholesale Grocery. In their testimonies, the police officers were first allowed to relate their response to a burglar alarm, the scene upon their arrival, the finding of Watts, and the evidence leading to Watts' arrest, including the finding of black gloves, a pry bar, and a broken power meter. The testimony also informed the jury that Watts was then handcuffed, searched and placed in a patrol car. Such testimony undoubtedly was sufficient to leave the jury with the full picture of the crime from start to finish. Yet the testimony did not end at this point and it is the fact that evidence of another crime was improperly admitted which creates insurmountable problems.
The Court stated in Brown:
This State has long adhered to the rule that the issue on a criminal trial should be single and that the evidence should be limited to what is relevant to the "single" issue. Evidence of a prior criminal activity on the part of one criminally accused is inadmissible where the prior offense has not resulted in a conviction. Tobias v. State, 472 So.2d 398, 400 (Miss. 1985); Donald v. State, 472 So.2d 370, 372 (Miss. 1985); Hughes v. State, 470 So.2d 1046, 1048 (Miss. 1985); West v. State, 463 So.2d 1048, 1051-52 (Miss. 1985); Tucker v. State, 403 So.2d 1274, 1275 (Miss. 1981); Sumrall v. State, 257 So.2d 853, 853 (Miss. 1972).
483 So.2d at 330.
The trial judge first heard the testimony at issue out of the presence of the jury and thereafter overruled Watts' objection. The court stated:
I am going to overrule the objection. As I understand the testimony, the Defendant was concealing himself, or attempting to conceal himself, during the nighttime, after the sounding of a burglary alarm, behind a dumpster there near the building, and when he was first viewed by the officers, he arose from behind the dumpster with gloves on, and then there when arrested, there were silver coins, which were the fruits of a burglary that was in the process of being investigated. I fail to see how he can complain to the introduction of this evidence. He was there with property that was evidence of another burglary, and I don't see how he can raise that as an objection in the trial of this case under these circumstances.
It is true that "[t]he determination of relevancy [of evidence] is left to the sound discretion of the trial judge whose determination will not be reversed in the absence of clear abuse." Lambert v. State, 462 So.2d 308, 313 (Miss. 1984); McNeil v. State, 308 So.2d 236 (Miss. 1975). However, in this case the charge was attempted burglary. The trial judge allowed into evidence testimony which indicated that upon Watts' arrest at the Gatewood Wholesale Grocery, there was discovered on his person items which were later proven to have been stolen from another business burglarized the previous night. Finding no merit to the State's contention that the testimony of other crimes was necessary to presenting a complete story of the crime charged, we are left with the possibility that the only purpose for this testimony was to imply that because Watts was connected to a prior burglary, of which he had not been convicted, he was very likely guilty in this case as well. The danger of a jury's employing this line of reasoning is directly addressed by Rule 404(b) of our Rules of Evidence.
In Jenkins v. State, 507 So.2d 89 (Miss. 1987), the appellant at trial unsuccessfully attempted to exclude evidence that he *1368 and another individual went to a grocery store with the intent to rob it, but ended up failing in an attempt to kidnap a customer from the parking lot instead. Id. at 91. The Court first noted that in order to pass muster under Rule 404(b), evidence must "be such that it satisfies some other evidentiary purpose beyond simply showing that [the defendant] is the sort of fellow likely to commit the crime charged... ." Id. at 92. If and when evidence clears the hurdle of Rule 404(b), however, it must still clear the test of Rule 403. The Jenkins court further reminded us:
To be sure, evidence admissible under Rule 404(b) is also subject to the prejudice test of Rule 403; that is, even though the Circuit Court considered the evidence at issue admissible under Rule 404(b), it was still required by Rule 403 to consider whether its probative value on the issues of motive, opportunity and intent was substantially outweighed by the danger of unfair prejudice. In this sense Rule 403 is an ultimate filter through which all otherwise admissible evidence must pass.

Id. at 93. (emphasis added).
Returning to the instant case, the trial court apparently found the testimony of Watts' alleged previous burglary admissible, though it is not clear upon what basis. Even with a finding of admissibility under Rule 404(b), however, it remains clear that the required balancing test of Rule 403 was never conducted. We again arrive full circle at the possibility that the jury improperly inferred that Watts "committed the crime for which he is on trial because he is a person who has displayed criminal propensities in the past." Id. at 92; McCormick, The Law of Evidence, Section 190. The Court in Jenkins also stated:
But if all that were before us were the proposition that Jenkins was likely to commit the crime at issue because he had previously formed the intent to rob the County Market, the evidence would be inadmissible under notions well embedded in our law both prior to and incorporated in the Mississippi Rules of Evidence. We refer her to Rule 403 which provides:
Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, ... .
Candor requires acknowledgement that, though technically relevant in the sense just mentioned, evidence of the character of that at issue here is not of great probative value. If presented to the jury, it has great prejudicial effect and it would arguably inject collateral issues into the case. See Michelson v. United States, 335 U.S. 469, 475-76, 69 S.Ct. 213, 218-19, 93 L.Ed. 168, 173-74 (1948); McCormick, The Law of Evidence.

Id. 507 So.2d at 92. (emphasis added).
In addition to the fact that no test of prejudicial effect versus probative value was conducted, there is also the fact that the "other crime" testimony was given free of any limiting instruction. In Ford v. State, 555 So.2d 691 (Miss. 1989), this Court addressed the mandatory application of the Rule 403 test. In that case, the appellant had been convicted of grand larceny. At his trial, the lower court allowed testimony of a subsequent crime, a similar robbery which took place the day after the robbery for which he was being tried. On appeal to this Court the defense argued that even if a subsequent crime did fall within Rule 404(b), that the precautionary test of Rule 403 must still be met. Id.

This Court agreed that Rule 403 provides some protection from allowing "any and all relevant evidence to be placed before the jury." Id., citing Jenkins v. State, 507 So.2d 89 (Miss. 1987). The Ford Court was mainly concerned, however, with "whether the trial judge properly instructed the jury that the evidence of another subsequent crime had a limited purpose." 555 So.2d at 695. The record indicated the jury had been given the following cautionary instruction:
The Court instructs the jury that the testimony of Gloria Carter regarding an *1369 alleged incident at the First National Bank in West Memphis, Arkansas, was offered in an effort to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, regarding this Defendant, John Wiley Ford. You may give this testimony such weight and credibility as you deem proper under the circumstances. However, you cannot and must not consider this testimony in any way regarding whether or not this Defendant is guilty or not guilty of the charge for which he is presently on trial.

Id. at 695-96. (emphasis in original). Thus, finding that the jury was properly issued a limiting instruction regarding testimony of a subsequent offense, and finding no error in the determination of the lower court that the admission of such evidence was not overly prejudicial under Rule 403, this Court affirmed the conviction.
We find no indication that a proper limiting instruction was submitted to the jury in the case sub judice, making it all the more likely that the testimony of another possible crime was considered for impermissible purposes, i.e. to imply that on this particular occasion, Watts was acting in conformity with his established character. We must conclude that the multiple problems associated with the admission of the testimony of evidence of another crime at Watts' trial constitutes reversible error. Further, while recognizing the need to be thorough, we would point out in hindsight that there appeared to be sufficient evidence to support Watts' conviction without the need to resort to evidence of Watts' connection to another unrelated crime. In a case where sufficient evidence is presented on each essential element of the crime, and a conviction is seemingly assured, the prosecution might do well to follow the old adage that "more is not always better" rather than risk upsetting the conviction by seeking to introduce inadmissible, and unnecessary evidence.

CONCLUSION
The decision of the lower court to allow the police to testify regarding evidence of another crime found on Watts' person at the time of his arrest for the crime in the case sub judice was error. Such testimony was clearly prejudicial and should have been disallowed as lacking any permissible probative value other than to imply that Watts was guilty of the attempted burglary of the Gatewood Grocery since he had apparently taken part in a prior burglary as well. The State's argument that the testimony was necessary to establish intent and/or to the telling of a complete and rational story of the events in question is not supported by our rules of evidence or case law under the facts presented. Further, even if the testimony were found admissible under Rules of Evidence Rule 404(b), the failure of the trial judge to conduct a probative value versus prejudicial effects test under Rule 403 was also error. Finally, no limiting, cautionary instruction was given to the jury regarding the testimony of the alleged prior offense. Without such an instruction, we cannot be sure that the jury properly evaluated and utilized this testimony for only permissible purposes. The numerous problems associated with the admission of the testimony into evidence requires reversal.
REVERSED AND REMANDED FOR A NEW TRIAL.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, PITTMAN, BANKS, McRAE and JAMES L. ROBERTS, Jr., JJ., concur.