805 So.2d 599 (2002)
William Curt EARNEST, IV a/k/a Curt Earnest, Appellant
v.
STATE of Mississippi, Appellee.
No. 2000-KA-00780-COA.
Court of Appeals of Mississippi.
January 8, 2002.
*600 James D. Shannon, Laura Hogan Tedder, Elise Berry Munn, Hazlehurst, Kelley Mitchell Berry, Chrystal Springs, for Appellant:.
Office of the Attorney General by Glenn Watts, for Appellee.
Before SOUTHWICK, P.J., IRVING, and MYERS, JJ.
IRVING, J., for the Court.
¶ 1. William Earnest was convicted in the Circuit Court of Lincoln County of touching and handling a child for lustful purposes. Feeling aggrieved of the conviction, he perfected this appeal and has assigned eight issues for review which are (1) whether the trial court erred in admitting testimony of T.H., Dennis Hall, and Dr. Anne Henderson, (2) whether the trial court erred in admitting hearsay testimony of appellant's son K.C., (3) whether the trial court erred in admitting testimony regarding the truthfulness and credibility of the victim, (4) whether the trial court erred in admitting T.H.'s closed circuit television testimony, (5) whether the trial court erred in excluding testimony of a sex offender profile, (6) whether appellant's rights under the Mississippi and United States Constitutions were violated by the harsh sentence imposed in this cause, (7) whether the venire was tainted by the exclusion of Lincoln County School District employees, and (8) whether he was denied a fair trial. We find reversible error as to issues one, two and eight.

*601 FACTS
¶ 2. William Earnest is married with two children Kevin and Curtis. Kevin is the younger of the two boys and has a playmate, J.L. Kevin was around four or five years old at this time and J.L. was six years old. This case arose from an interaction between Earnest and J.L. on or about May 23, 1999. Because that interaction is the subject of litigation, some facts are disputed.
¶ 3. The undisputed facts follow. On or about May 22, 1999, J.L. arrived at Earnest's home with Earnest's son, Kevin. At that time, Earnest's wife was gone to pick up their older son. J.L. brought additional clothing in order to play on a "slip and slide" water game with Kevin. Earnest helped J.L. put his swimsuit on. Later, J.L. came into the house to use the bathroom. After J.L. used the bathroom, Earnest helped him wipe his "hiney." J.L. went back outside with Kevin and continued to play on the "slip and slide." J.L. went home later that day.
¶ 4. Around noon the following day, J.L.'s mother, P.L., informed Earnest's wife that J.L. had told P.L. and P.L.'s mother, L.L., that Earnest had touched him inappropriately the preceding day, as well as other times before. Later that same day, Earnest called J.L.'s mother to discuss the allegations. During the phone conversation, Earnest requested that J.L. not come back because he had been subjected to allegations like these before.[1]
¶ 5. The following week, J.L.'s mother took him to the Brookhaven Police Department where criminal charges were filed. While at the police department, J.L. met with Mary Magee, a licensed social worker, from the Department of Human Services. Ms. Magee referred him to Dr. Lisa Yazdani at the Child Advocacy Center.

ANALYSIS AND DISCUSSION OF THE ISSUES
¶ 6. Issues one through four relate to the admission of testimony which Earnest claims was admitted in violation of various evidentiary rules; issue five addresses testimony which, according to Earnest, was improperly excluded under our evidentiary rules. Because of the interrelatedness of the questions raised by these issues, we will address them together in light of established law that the admissibility of evidence rests within the discretion of the trial court. Baine v. State, 606 So.2d 1076, 1078 (Miss.1992). A reversal of the trial court's decision on the admission of evidence will be appropriate only when an abuse of discretion results in prejudice to the accused; a substantial right of the accused must be affected. Parker v. State, 606 So.2d 1132, 1137-38 (Miss.1992).

1. Testimony of Taylor Hall, Dennis Hall, and Ann Henderson, Ph.D.
¶ 7. Earnest objected to the substance of Taylor Hall's testimony as well as the method utilized in the giving of her testimony. She was allowed to testify by closed circuit television. Objection also was made to the testimony of Dennis Hall, Taylor's father, and Ann Henderson, Ph. D., a counseling psychologist, who counseled Taylor. For the reasons that follow, we conclude that Taylor's testimony was improperly admitted. We also conclude that the testimony Taylor's father, Dennis, and her counselor, Dr. Henderson, should not have been admitted since their testimony stemmed from and was integrally *602 related to Taylor's. However, we need not discuss their testimony nor address the issues raised regarding their testimony since our holding regarding Taylor's testimony renders moot the objection to their testimony. It is sufficient to say that their testimony consisted of what Taylor told them about the incident.
¶ 8. Taylor, at the time of trial, was eight and one half years old; she was in the third grade. She testified that she lived five houses down the street from Earnest. She testified that one day in 1998, while she was riding with her daddy in his truck, she told him that Earnest had touched her on her private part. She stood up and, by pointing, demonstrated to the jury the part of her body that Earnest touched. She testified that the touching occurred in Earnest's house in the kitchen while Earnest's two sons, Kevin and Curtis, were in the living room playing a video game. Earnest's wife was not at home at the time. Taylor could not remember how long it was from the touching to the time she told her father, neither could she remember how many times Earnest touched her. She was asked if Earnest touched her just one time, and she shook her head negatively.
¶ 9. Earnest argues that the admission of Taylor's testimony violated Rules 404(b) and 403 of the Mississippi Rules of Evidence because the testimony concerned another crime or act for which he was not on trial. Earnest further argues that even if the testimony was admissible under one of the exceptions permitted by the rule, it still should have been strained out via the Rule 403 filter through which all Rule 404(b) evidence must pass. On the other hand, the State says that Taylor's, her father's and Dr. Henderson's testimony was properly admitted pursuant to M.R.E. 404(b) modus operandi and 803(3), (25).
¶ 10. The trial court, agreeing with the State, made the following ruling:
THE COURT: All right. Well, it will first be relevant under 401. There is similarity. The age of the child, happened at the same house, happened in the same room. The modus operandi is similar enough. There is no problem with the time because of the child's age. Are you submitting his testimony under 404(b) at this time and also under 803(25)?[2]
MR. RUSHING: Yes, Your Honor, under 404(b) as the modus operandi, plus, Your Honor, intent, because the statements made during the cross-examination have been to the effect that he has touched the child, but the defense's allegation is that it was not for lustful purposes. So it goes not only to the modus operandi, with the similarities of the two acts with the children, but also as to the intent of his touching these children.
THE COURT: Well
MR. RUSHING: Lack of mistake.
THE COURT: Also motive.
MR. RUSHING: Yes, sir.
THE COURT: Which would put it under 404(b). And again, I think the jury is entitled to hear the whole story, the whole situation. So we find that under 404(3), that this witness's testimony's probative value on the issues of motive, opportunity, the house, in the kitchen, and intent is substantially outweighed by any danger of unfair prejudice. That will be under 404(b). Under 803(25), the *603 witness 803(3) and (2), the state of mind of the six year old witness. And 803(2), I think would allow it to be admitted as to 803(25) here has been no occasion of improper motive. Been nothing to indicate the character of the child was bad. I understand that she did go ahead and tell her mother.
* * * *
THE COURT: She told her father and her mother. Under four, the child's statement was spontaneous. It doesn't appear to be a time problem. Relationship between the child and her father would be appropriate for the child to make such a statement to her father. There has been nothing to show that the child had a faulty recollection. There is no doubt about the statements having been made. There is nothing to show that the fatherthat there is any problem with his credibility. The statement being spontaneous, there was no suggestive question or leading question, et cetera, made to get the statement out of the child. It's unlikely that a six year old child would fabricate such a statement. So, we will allow, in addition to 404(b), to 803(2) and 803(3) and 803(25).
¶ 11. Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." M.R.E. 404(b). Rule 403 provides that "[a]lthouth relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."
¶ 12. Earnest cites Lambert v. State, 724 So.2d 392 (Miss.1998), and Mitchell v. State, 539 So.2d 1366 (Miss.1989), in support of his position that the testimony of Taylor, her father, Dennis, and Henderson should have been excluded and that the failure of the trial judge to exclude it constitutes reversible error. We agree. In fact, Lambert and Mitchell appear to be on all fours with our case.
¶ 13. In Mitchell, our supreme court rejected the admission of a defendant's prior sexual misbehavior with other children to show the "system of criminal action and lustful disposition of the defendant toward children." Mitchell, 539 So.2d at 1372. Furthermore, it concluded that under Rule 404(b), "evidence of other sexual relations [should be limited] to those between the defendant and the particular victim." Id. The court in Mitchell noted that to do otherwise would be "inconsistent with the notion that a defendant is on trial for a specific crime and not for generally being a bad person." Id.
¶ 14. In Lambert Woodie Lambert was put on trial for touching a child, M.D., for lustful purpose. Lambert, 724 So.2d at 392. During his trial, the trial court allowed testimony of "alleged prior acts of sexual misconduct with young girls other than M.D." Id. This Court, relying upon Mitchell, reversed Lambert's conviction. Id. The Mississippi Supreme Court granted certiorari and affirmed this Court's interpretation of the holding in Mitchell. In so doing, the Lambert court said:
The Court of Appeals found that Mitchell holds that any time evidence of a sexual offense other than the one charged, which involves a victim other than the victim of the charged offense, is admitted, then that admission of evidence of the offense is per se reversible, even if the evidence at issue comes under one of the exceptions under M.R.E. *604 404(b). This interpretation is what the State questions in its petition. The State argues that Mitchell should not be applied so mechanically, and that the evidence here did fit one (or all) of the exceptions under 404(b). While we agree that there could be a case where similar evidence could be admissible, the Court of Appeals was correct in reversing Lambert's conviction.
While the argument could be made that the evidence in question fits one of the 404(b) exceptions, the evidence which was admitted is extremely prejudicial under M.R.E. 403. Admission of such evidence would amount to the exception that negates the rule.
Id. at 394 (¶¶ 6-7).
¶ 15. Based on the authorities cited, we hold that the trial court committed reversible error by allowing the testimony of Taylor Hall, her father, Dennis Hall and Ann Henderson, Ph.D. Taylor's testimony was inadmissible under Rule 404(b), and her father's and counselor's testimony was inadmissible under Rule 803(3)(25). Now, having disposed of the Rule 404(b) issue, we feel the need to comment on an additional part of the trial court's ruling. In making his ruling that testimony relating to the Taylor Hall incident was admissible, the trial court stated, "And again, I think the jury is entitled to hear the whole story, the whole situation." It is not clear as to which "whole story" the trial judge was making reference. If he was referring to the Taylor Hall incident as being an integral part of the charge for which Earnest was on trial, we reject this view of the case. While "proof of another crime is admissible where the offense charged and that offered to be proved are so connected as to constitute one transaction" (Baine v. State, 604 So.2d 258, 261 (Miss.1992)) (quoting Darby v. State, 538 So.2d 1168, 1173 (Miss.1989)), that is not the case here. The alleged molestation of Taylor Hall occurred more than a year prior to the alleged fondling in this case, and there is no evidence or accusation that Earnest also committed an act against J.L. at that time.

2. Statements Allegedly Made by Kevin Earnest
¶ 16. During trial, J.L.'s grandmother testified to statements she allegedly overheard spoken by Earnest's son, Kevin. The statement at issue is Kevin's alleged statement to J.L. that "he [his father Earnest] only does it to you and me." The lower court allowed this testimony under Rule 404(b), modus operandi, Rule 803(2), excited utterance, Rule 808(3) present sense impression and Rule 803(25), tender years exceptions to the hearsay rule.
¶ 17. Earnest argues that the testimony of J.L.'s grandmother concerning the statement allegedly made by Kevin to J.L. was not Rule 803(2) excited utterance exception because disappointment of a child in Kevin's position hardly qualifies as a startling event necessary to sustain an excited condition. Earnest also argues that Rule 803(25) does not apply to this testimony because it lacks the substantial indicia of reliability required by the rule. Earnest notes that there was nothing in the testimony to indicate that Kevin had personal knowledge of anything that allegedly happened to J.L.; J.L. testified that when the indicted offense occurred, Kevin was playing Nintendo. Also, Earnest notes that Rule 803(25) requires that the child be either unavailable or testify at the proceeding. The Court found Kevin was not unavailable; yet Kevin was not called to testify by either party. Finally, Earnest asserts that if this testimony was not necessary to add credence to J.L.'s account of what happened to J.L., then we have to assume it was admitted to show *605 that Earnest committed a similar offense on his son. This, says Earnest, would be an impermissible use of character testimony under Rule 404(b).
¶ 18. The State, on the other hand, contends that Kevin's statement was properly admitted as an excited utterance because the children were good friends and the statement was made when Kevin was excited about the fact that J.L. could not play with him anymore. The State notes that the record reflects a finding by the trial court of "indicia of reliability" following the court's consideration of the Mississippi Rule of Evidence 803(25) tender-years exception factors. Kevin did not have a reason to lie, the timing was appropriate because it was spontaneous, his memory seemed reliable, and no suggestive technique was used by the grandmother to gain the information. The State also contends that Ford v. State; Watts v. State; and Smith v. State support the testimony as a Rule 404(b) exception for the limited purpose of proving modus operandi. Ford v. State, 555 So.2d 691 (Miss.1989); Watts v. State, 635 So.2d 1364 (Miss.1994); Smith v. State, 656 So.2d 95 (Miss.1995).
¶ 19. This Court finds favor in Earnest's Rule 404(b) argument. The statement, while referring in part to J.L., also refers to Earnest's alleged molestation of a child other than J.L. There is no proof in the record that J.L. ever told Kevin about the alleged incident between J.L. and Earnest. While the grandmother's testimony insinuates Kevin's scienter of the incident, she did not testify that she heard J.L. tell Kevin about what Earnest allegedly did to J.L. The reasons that we have already discussed as the basis for excluding Taylor Hall's testimony apply with equal force here; therefore, there is no need to discuss this issue any further. We hold that the trial court committed reversible error in admitting the testimony of J.L.'s grandmother.

3. Testimony of Lisa Yazdani and Mary Magee

¶ 20. During the trial, Earnest objected to the testimony generally of Mary Magee, a licensed Lincoln County social worker, and Dr. Lisa Yazdani, a counseling psychologist. He also objected to specific questions which he believed were designed to ascertain Magee's and Yazdani's opinion as to J.L.'s credibility and veracity. His objections were overruled, and each was allowed to testify concerning her interview with J. L., including their general assessment of him. In his appellate brief, Earnest attacks only that portion of Magee's and Yazdani's testimony which, in his opinion, constitutes a bolstering of J.L.'s testimony or an opinion as to J.L.'s credibility and veracity. He does not now contend that allowing their testimony generally was error. Indeed, it is well that he does not, for the law is well settled that in sexual abuse cases, the out-of-court statements of the child victim may be admitted under the appropriate subpart of Rule 803, depending upon the facts and circumstances of the specific case. See, e.g., Baine, 606 So.2d at 1079-81.
¶ 21. We have reviewed the questions complained of as well as the answers given. It appears debatable to us as to whether the questions asked were for the purpose of eliciting an opinion as to J.L.'s credibility and veracity or were designed to solicit an answer which would bolster his testimony. It also appears that the answers were not wholly responsive to the questions asked. Therefore, we decline to find the trial judge in error on this issue. However, since we are reversing and remanding this case on other grounds, we caution the trial court, as did the Mississippi Supreme Court in Griffith v. State, *606 584 So.2d 383, 387 (Miss.1991), "against allowing direct comments as to [J.L.'s] veracity."

4. Exclusion of the Testimony of Gerald C. O'Brien and Donald Guild

¶ 22. Earnest offered opinion testimony of Gerald C. O'Brien, Ph.D., a psychologist, and Donald Guild, M.D., a psychiatrist, concerning their evaluation and assessment of him based on a battery of tests that they gave him. Earnest argues that Dr. O'Brien's and Dr. Guild's testimony concerning their evaluation and assessment should have been admitted under Rule 702 of the Mississippi Rules of Evidence.
¶ 23. Rule 702 provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." M.R.E. 702.
The admission of testimony is within the sound discretion of the trial court. Roberts v. Grafe Auto Co., 701 So.2d 1093, 1098 (Miss.1997). Unless we conclude that the discretion was arbitrary and clearly erroneous, the decision will stand. Id. (citing Seal v. Miller, 605 So.2d 240, 243 (Miss.1992); Hooten v. State, 492 So.2d 948, 950-51 (Miss. 1986)).
Under Mississippi Rule of Evidence 702, expert testimony should be admitted only when the trial court can affirmatively answer a two-fold inquiry. First, the witness must be qualified as an expert because of the knowledge, skill, experience, training, or education he or she possesses. M.R.E. 702. See also Watkins v. U-Haul Int'l, Inc., 770 So.2d 970, 973(Miss.Ct.App.2000). Second, the witness's scientific, technical, or other specialized knowledge must assist the trier of fact to understand or decide a fact in issue. Id. Rule 702 "does not relax the standard that the expert must indeed be qualified to speak an opinion on a matter within his alleged field of knowledge," nor does it "relax the requirement that the scientific principle from which the expert's opinion is derived `must be sufficiently established to have gained general acceptance in the particular field to which it belongs'" M.R.E. 702 cmt. (quoting Frye v. United States, 293 F. 1013, 1014 (D.C.Cir.1923)).
Kansas City So. Ry. Co., Inc. v. Johnson, 798 So.2d 374 (¶¶ 28-9)(Miss.2001).
¶ 24. In this case, the trial judge determined, without specifically saying so, that the second prong of the rule was not met, that is, that the information possessed by Drs. O'Brien and Guild would not assist the jury to decide whether Earnest did in fact commit the charged offense. Specifically, the trial judge determined that the opinions proffered by Drs. O'Brien and Guildthat Earnest did not fit the profile of a sexual offenderwere not derived from scientific principles generally accepted in their fields because there is no scientifically acceptable profile of a sex offender. The record reflects that the doctors even admitted as much, notwithstanding their testimony that the battery of tests they administered to Earnest are generally accepted and widely used in the fields of psychology and psychiatry. Based on these facts, we cannot conclude that the trial judge's decision to not allow the expert testimony was arbitrary and clearly erroneous; therefore, we affirm him on this issue.

5. Constitutionality of the Sentence

¶ 25. Earnest contends his sentence of fifteen years with three years suspended *607 violated the Eighth and Fourteenth Amendments of the U.S. Constitution and Article 3, § 28 of the Mississippi Constitution in that the sentence was not supported by the evidence. He also asserts that the sentence is excessive for the crime committed and/or disproportionate in comparison with other sentences in this and other jurisdictions. In addition, Earnest claims that the trial court wrongfully considered accusations of other crimes of which Earnest has not been formally accused.
¶ 26. The State argues that the sentence was not harsh because it met the statutory guidelines provided for punishment by the legislature. The State notes that no other victims were mentioned by the trial court during the sentencing hearing nor in the sentencing order.
¶ 27. Sentencing is within the complete discretion of the trial court and not subject to appellate review if it is within the limits prescribed by statute. Hoops v. State, 681 So.2d 521, 537 (Miss. 1996) (citing Reynolds v. State, 585 So.2d 753, 756 (Miss.1991)). The Mississippi Supreme Court has recognized that an appellate court will not overturn a sentence by a lower court unless it is a clear abuse of the judge's discretion. Wallace v. State, 607 So.2d 1184, 1188 (Miss.1992). Earnest's sentence was well within statutory guidelines. He offered no evidence in the court below which would indicate any disproportionality in his sentence with other sentences in Lincoln County or surrounding jurisdictions. Therefore, we will not consider this part of his argument. We affirm the trial judge on this issue.

6. Exclusion of Employees of the Brookhaven and Lincoln County School Districts from the Venire

¶ 28. Earnest argues that the jury panel was tainted because the employees of the Brookhaven and Lincoln County School Districts had been singled out. Earnest's argument is based on the fact that each juror associated with the school district was individually questioned concerning a possible contact by his wife.
¶ 29. The State argues that Earnest failed to object to the individual voir dire. In addition, the State asserts that Earnest agreed with the State and trial court to undertake the questioning in order to avoid tainting the jury. The record clearly reflects that Earnest's counsel agreed to the individual voir dire. An excerpt from the record shows that Earnest's counsel, Mr. Shannon said, "We'd like to voir dire these people individually if we could." This statement was made in response to the State's counsel, Mr. Rushing saying, "Out of an abundance of caution, Judge, we are going to make sure that no one has been talked to on the jury panel." The record further shows that Earnest's counsel objected only after the individual voir dire and after the Brookhaven and Lincoln County School District employees had been dismissed. The State cites Baker v. State, 327 So.2d 288 (Miss.1976), for the proposition that this objection was untimely. We agree that the motion was untimely and affirm the trial court on this issue.

7. Fairness of the Trial

¶ 30. Earnest asserts that each issue set forth is grounds for reversible error. In the alternative, Earnest asserts that the cumulative effect of the errors hindered him from having a fundamentally fair trial; he cites Mitchell v. State, 539 So.2d 1366, 1373 (Miss.1989).
¶ 31. We have already found that the trial was reversibly flawed and that a new trial must be held. Accordingly, we find no need to address this issue beyond what we have already said. This case is reversed *608 and remanded for a new trial consistent with the holdings of this opinion.
¶ 32. THE JUDGMENT OF THE CIRCUIT COURT OF LINCOLN COUNTY IS REVERSED AND REMANDED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LINCOLN COUNTY.
McMILLIN, C.J., KING and SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, MYERS and CHANDLER, JJ., concur.
BRANTLEY, J., not participating.
NOTES
[1] The previous allegations of which Earnest referred involved a 1998 complaint filed by the parents of Taylor Hall charging Earnest with touching and fondling Taylor. These charges were nolle pressed later that same year.
[2] Evidence regarding the alleged incident with Taylor was first admitted through the testimony of her father, Dennis, whose testimony preceded Taylor's. This explains the discussion regarding Rule 803 as one of the basis for admission of the testimony since Mr. Hall was testifying to what Taylor told him.